UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIGI FAIRCHILD-LITTLEFIELD,<br><br>              Plaintiff,<br><br>    vs.<br><br>R. AMEZCUA,<br><br>             Defendants. | **1:20-cv-00799-JLT-GSA-PC**<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANT AMEZCUA FOR SUBJECTING PLAINTIFF TO ADVERSE CONDITIONS OF CONFINEMENT, AND DISMISSING ALL OTHER CLAIMS AND DEFENDANTS**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS** |

I.      BACKGROUND

Gigi Fairchild-Littlefield ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On June 9, 2020, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On September 9, 2021, the court dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 24.)  On September 28, 2021, Plaintiff filed the First Amended Complaint which is now before the court for screening.  28 U.S.C § 1915.  (ECF No. 25.)

II.      SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the Robert Presley Detention Center in Riverside, California.  This case arose from events allegedly occurring at the Central California Women's Facility ("CCWF") in Chowchilla, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation ("CDCR").   Plaintiff names as defendants Sergeant R. Amezcua and CCWF ("Defendants").

Plaintiff's allegations follow:

**Plaintiff's Eleven Boxes of Property**

On March 25, 2020,  Plaintiff reported that she had been assaulted in unit 510-16 by her cellmate Dixon and asked to be moved to another yard.  Although there were witnesses, the C Facility Program Office denied that Plaintiff had been assaulted.  Plaintiff was reassigned housing

in unit 511, also in C-yard.  She refused the housing due to safety concerns and refused to sign a non-enemy chrono with inmate Dixon.  She was told she would receive a CDCR 115 and be taken to Administrative Segregation (Ad-Seg).  She had never been to Ad-Seg before in 20 years at CCWF.

On March 26, 2020, at about 2230 hours, two boxes of legal documents and nine boxes of personal property were brought to the C Program Office, eleven (11) boxes total.  Plaintiff was very tired because she had spent the night in a holding cage and had not slept since awakening the day before at 0400 hours.  When Defendant Sgt. Amezcua asked Plaintiff if she had receipts for all of her property, Plaintiff thought Amezcua was asking whether she had the receipts on her, and she said, "No."  (ECF No. 25 at 5.)  Defendant Amezcua said he was confiscating all of Plaintiff's property and Plaintiff would have to "602" to get it back.[1]  Plaintiff was brought nine property inventories and nine CCWF-0016 confiscation forms to sign, and she signed all of them.  Several correctional officers were in the conference room and one of them quietly said, "He's planning to deprive you of your property.  Get your receipt copies."  (Id.)  Plaintiff asked for her copies and was told that she would get them when she got to Ad-Seg, that it was too late to take her there now, and she would be staying in the holding cage for another night.

Twenty-six hours after signing the forms Plaintiff was taken to Ad-Seg.  She asked for her copies of the receipts and forms, but was told she needed to "602" because Sgt. Amezcua had confiscated her property.  Plaintiff 602'd from Ad-Seg but her request was rejected because she did not have receipts.

Only two boxes of her legal documents went with Plaintiff to Ad-Seg.  When she was released from Ad-Seg on or about April 16, 2020, it was very cold and she only had shower shoes and the clothes on her back, no jacket.  She didn't even have a toothbrush.  She was given a bag which contained only toothpaste and a few papers.  When she was released from Ad-Seg to a new cell a friend gave her a toothbrush, but she didn't have a cup to drink from or a utensil to eat

---

[1] Form 602 is the form used by CDCR prisoners to file a grievance.

with.  Later she was able to buy things she needed.  She had to purchase a new JPay tablet charger.

Plaintiff again 602'd her property and her request was denied, but it was noted that Plaintiff could receive the documents needed to recover her property from her Correctional Counselor.[2]

**Time Spent in the Cage**

Plaintiff alleges that she was housed in a metal cage for hours before she was taken to Ad-Seg.  She asserts that the prison's Department Operations Manual (DOM) states, under Article 2, Use of Force, § 51020 that "[p]lacement in a holding cell shall only be a temporary measure normally not exceeding four (4) hours in duration. . ." and "at no time, nor for any reason, shall a holding cell be used as a punitive measure."  "Any extension beyond four (4) hours shall require the approval of [prison officers in charge]."  (ECF No. 25 at 12-13.)

Plaintiff alleges that the cage, or holding cell, which was situated in the program office, was about the size of an old-time telephone booth, about 2 ½ feet square.  The program office door was kept open all night.  It was very cold, as it was raining, and there was a storm raging with thunder and lightning.  Plaintiff remained there waiting to be taken to Ad-Seg from approximately 1600 hours on March 25, 2020 until approximately 0200 hours on March 28, 2020, which was about 82 consecutive hours without sleep as she had been awake since 4am on March 25.

Plaintiff kept asking to be taken to Ad-Seg as she had been told.  After she signed for her property on the 26th she thought she would be taken, but when she asked for her property receipt copies she was told it was too late to take her to Ad-Seg.  This is about the time the AOD (name unknown) conferred with Defendant Amezcua, and when the AOD left the office Plaintiff overheard him tell the Sergeant, "She writes paper and if it comes down to it, I will testify against you, Bro."  (ECF No. 25 at 18.)  After that, Plaintiff spent her second night in the cage, freezing with the program door open to the outside.  She asked several times if the door could be closed.

---

[2] Plaintiff reports in the First Amended Complaint that she received all 9 boxes of her property after she filed this lawsuit.

The next morning, March 27, 2020, Plaintiff asked the 2nd watch officers if she would now be taken to Ad-Seg.  They said it was a 3rd watch issue.  When the 3rd watch arrived at about 1400 hours she asked if she was going to be taken to Ad-Seg and stated that her property was taken the day before.  Plaintiff was told she would have to wait.  Around 10pm, on her way to the restroom, Plaintiff asked to speak to the Lieutenant.  Plaintiff was told that it was after 10pm and any decision about Plaintiff would belong to the watch commander.  Plaintiff asked Defendant Amezcua if she (Plaintiff) could speak to the watch commander, Lt. Williams.  He said he "didn't see that happening."  (ECF No. 25 at 19.)

Someone called Lt. Williams and around 11pm on March 27, 2020, Lt. Williams came and spoke with Plaintiff, completed her Ad-Seg placement order due to security concerns based on confidential information (C.I.) witness statements from Plaintiff's cellmate that confirmed that Plaintiff had indeed been assaulted on March 25, 2020.  On the way to Ad-Seg the officer escorting Plaintiff took her to medical for another examination to document the bruising to Plaintiff's face which was now visible.

By the time Plaintiff was taken to Ad-Seg she was delirious from sleep deprivation and her back muscles were in spasm so intense it took a week for the muscles to relax and to feel moderate comfort again.

During the time she was in the holding cage, between March 25, 2020 at 1600 hours and March 28, 2020 at 0200 hours, Plaintiff notified all the staff present at the Facility C Sergeant's Office that she was in pain, had back problems, had a chrono for no sitting or standing over 4 hours, and would like to be taken to Ad-Seg.  Plaintiff also told the staff that she was refusing housing due to safety concerns.  When Lt. Williams completed Plaintiff's lockup order to move Plaintiff to Ad-Seg, it stated on it "Due to safety concerns" and "C.I. from cellmate."  (ECF No. 25 at 20.)  Plaintiff had been told by Defendant Amezcua on March 25, 2020 that there was no confirmation of Plaintiff's alleged assault.  The staff had confirmation and refused to act, which Plaintiff believes qualifies as deliberate indifference, and her being kept in the cage knowing she had a medical condition causing her extreme pain and for which she had a chrono was "reckless" because they chose to disregard a risk of harm of which they were aware.

Plaintiff alleges she was subjected to "force" because the prison's Department Operations Manual describes "holding cells" under Use of Force.  She previously requested CCWF to preserve evidence in the form of video and audio of the Facility C program cage area from 0800 hours on March 25, 2020 through 0100 hours on March 28, 2020, and also video and audio from Unit 511 porch, dayroom, and game room from 1100 hours to 1600 hours on March 25, 2020.

**Assault on Plaintiff by her Cellmate**

On March 25, 2020, Plaintiff was assaulted by her cellmate Dixon while Plaintiff was sitting on her own bunk reading a book.  Dixon started with a verbal assault and then grabbed Plaintiff's book and struck her in the face with it several times.  Dixon also ripped several handfuls of Plaintiff's hair from her scalp. During the assault, staff came and unlocked the cell door because Plaintiff had laundry in the laundry room, and Dixon shoved Plaintiff towards the door, after which Plaintiff exited the cell.  Plaintiff reported the assault and was taken to medical, but at that time the bruising on her face was not yet visible.  When Plaintiff ran her hand through her hair and clumps of hair fell to the floor the nurse said, "Stop that."  Plaintiff requested to be moved to another yard but her request was denied.  Other inmates were interviewed as to what they witnessed, but no one verified Plaintiff's claim of assault.

Inmate Dixon had been bullying Plaintiff for several years and any time that Plaintiff tried to move, the cell where Plaintiff had been accepted and planned to move would then reject Plaintiff based on false information from Dixon.  Plaintiff was concerned for her safety.  Plaintiff believes that Dixon assaulted her because Dixon was disappointed that she had been unable to discover any information about Plaintiff's conviction that Dixon could use to her advantage. Several weeks earlier, Plaintiff became aware that someone had gone through a box of her legal documents.  Plaintiff was unsure who it was, but during the assault Dixon made wild accusations about Plaintiff's commitment offense, and Dixon's girlfriend said, "Well, maybe it was a civil rights violation."  (ECF No. 25 at 15.)  When Plaintiff told the Facility C staff that she had been assaulted and wanted to move to B Yard for personal safety, she was told that no one in the cell had provided any information that would lead them to believe that she had been assaulted, and she was being returned to C Yard.  Plaintiff then refused housing due to safety concerns

6

Plaintiff requests compensatory and punitive damages.

## IV.   PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles

the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.   <u>Defendant CCWF – Eleventh Amendment Immunity</u>

The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit.  <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 237-38 (1985).  Eleventh Amendment immunity also extends to suits against an arm of the state, such as the CDCR and prisons within the CDCR.  <u>See</u> <u>Brown v. Cal. Dep't of Corrs.</u>, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity).

Plaintiff names the Central California Women's Facility ("CCWF") as a defendant in this case.  CCWF is a state prison within the CDCR.  Therefore, CCWF is entitled to Eleventh Amendment immunity from suit and must be dismissed from this case.

### B.   <u>Excessive Force</u>

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  <u>Id.</u> (internal quotation marks and citations omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  <u>Id.</u> at 9; <u>see also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  <u>Id.</u> at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind."  <u>Id.</u> at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

### 1.    Claim Against Cellmate Dixon

To the extent that Plaintiff seeks to bring an excessive force claim against her cellmate Dixon, Plaintiff may not do so. In order for individual defendants to be held personally liable under 42 U.S.C. § 1983, they must have acted under the color of state law. Jensen v. Lane Cty., 222 F.3d 570 (9th Cir. 2000). Courts have consistently rejected attempts to cast the § 1983 net wide enough to include fellow inmates. See, e.g., Jackson v. Foster, 372 F. App'x 770, 771 (9th Cir. 2010) (concluding that "the district court properly dismissed Jackson's excessive force claim because [fellow] inmate . . . did not act under color of state law under any formulation of the governmental actor tests"); see also Gettimier v. Burse, No. 2:13CV44HEA, 2015 WL 75224, at *5 n.3 (E.D. Mo. Jan. 6, 2015) ("The fact that a fellow inmate is not a 'state actor' for purposes of § 1983 litigation is so fundamental as to not require citation."); Rigano v. Cty. of Sullivan, 486 F. Supp. 2d 244, 256 n.15 (S.D.N.Y. 2007) ("Plaintiff also appears to bring a claim against the inmate defendants pursuant to 42 U.S.C § 1983. It is well-established that a § 1983 claim is only cognizable against a state actor and not a fellow inmate.")

Therefore, Plaintiff may not proceed against her cellmate for use of excessive force under § 1983.

### 2.    Claim for Detention in the Holding Cell

Plaintiff alleges that she was subject to "excessive force" by Defendant Sgt. Amezcua because she was detained in a holding cell for approximately 80 hours. Plaintiff indicates that

she is proceeding with an "excessive force" claim in this instance because the prison's Department Operations Manual addresses placement in holding cells under Article 2, Use of Force, § 51020 ("[p]lacement in a holding cell shall only be a temporary measure normally not exceeding four (4) hours in duration. . ." and "at no time, nor for any reason, shall a holding cell be used as a punitive measure.")  However, the court finds that Plaintiff's claim for detention in the holding cell falls squarely within a § 1983 "conditions of confinement" claim rather than an "excessive force" claim, and the court shall address this claim under the "conditions of confinement" heading that follows.

### B.        Conditions of Confinement – Eighth Amendment Claim

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to [her] health or safety.  E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v.

Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.

First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer, 511 U.S. at 834.  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Johnson, 217 F.3d at 731.  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.   Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 9.   The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson, 217 F.3d at 731.

Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128.

Plaintiff alleges that Defendant Sgt. Amezcua detained her in a metal cage, or holding cell, the size of a telephone booth, for more than 80 hours without sleep while waiting to be housed in Ad-Seg.  The court finds that Plaintiff states a claim against Defendant Amezcua for subjecting her to adverse conditions of confinement in violation of the Eighth Amendment.

**C.   Loss of Personal Property – Due Process**

Plaintiff brings a claim against Defendant Amezcua for the confiscation of her personal property.

Prisoners have a protected interest in their personal property.  Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, a plaintiff has no due process claim based on the defendants' unauthorized deprivation of [her] personal property—whether intentional or negligent—if a

meaningful state post-deprivation remedy for [her] loss is available. <u>See</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984). California's tort claim process provides that adequate post-deprivation remedy. <u>Barnett v. Centoni</u>, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); <u>see also</u> <u>Teahan v. Wilhelm</u>, 481 F. Supp. 2d 1115, 1120 (S.D. Cal. 2007); <u>Kemp v. Skolnik</u>, No. 2:09-CV-02002-PMP, 2012 WL 366946, at *6 (D. Nev. Feb. 3, 2012) (finding prisoner's alleged loss or destruction of newspaper, magazines, and books failed to state a Fourteenth Amendment claim pursuant to <u>Hudson</u> and noting that "[i]f Plaintiff wishes to recoup the value of the alleged lost materials, he will have to file a claim in small claims court in state court.").

Therefore, Plaintiff fails to state a due process claim for the confiscation of her personal property.

### D.      Confinement in Administrative Segregation – Due Process

The Due Process Clause protects against the deprivation of liberty without due process of law. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. <u>Id.</u> Liberty interests may arise from the Due Process Clause itself or from state law. <u>Id.</u>

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 466-68 (1983); <u>see also</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (citing  Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)).  Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (citing Sandin at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007)).  There is no single standard for determining whether a prison hardship is atypical and significant, and the "condition or combination of conditions or factors . . . requires case by case, fact by fact consideration."  Id. (quoting Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996).  Three guideposts cited in Sandin's analysis, however, provide a helpful framework: 1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence. Sandin, 515 U.S. at 486–87, 115 S.Ct. 2293; Keenan, 83 F.3d at 1089.

Plaintiff alleges that she was wrongly disciplined and confined in Ad-Seg for approximately twenty days.  However Plaintiff has not described conditions in Ad-Seg that amount to atypical and significant hardship in relation to the ordinary incidents of prison life. See, e.g., Borcsok v. Early, 299 F. App'x 76, 78 (2nd Cir. 2008) (ninety-day "confinement and loss of privileges did not rise to a liberty interest, warranting procedural due process protection"); Williams v. Foote, No. CV 08-2838-CJC (JTL), 2009 WL 1520029, at *10 (C.D. Cal. May 28, 2009) (no protected liberty interest for 701 days stay in administrative segregation); Rodgers v. Reynaga, No. CV 1-06-1083-JAT, 2009 WL 621130, at *2 (E.D. Cal. Jan. 8, 2009) (retention in administrative segregation for five months was not an atypical and significant hardship).

In particular, the brief time plaintiff spent in Ad-Seg is relevant to this conclusion.  See Sandin, 515 U.S. at 486-87 (duration of the condition is a factor to be considered); Holland v. Schuyler, No. 1:16-cv-1271-DAD-GSA-PC, 2017 WL 3601493, at *5 (E.D. Cal. Aug. 22, 2017) (plaintiff with spinal degeneration who was forced to sleep on a bad mattress did not establish a

liberty interest); <u>Manzanillo v. Moulton</u>, No. 13-cv-2174-JST (PR), 2014 WL 4793780, at *12-13 (N.D. Cal. Sept. 25, 2014) (35-day stay in noisy psychiatric unit in which other inmates threw feces and urine not an atypical and significant hardship); <u>Skinner v. Schriro</u>, No. CV 06-1879-PHX-SMM, 2009 WL 10695438, at *1, (D. Ariz. July 10, 2009) (segregated housing that included loss of privileges, loss of electrical appliances, and stifling temperatures for 90 days not atypical and significant); <u>Baker v. Walker</u>, No. CIV S-08-1370 DAD P, 2008 WL 2705025, at *3 (E.D. Cal. July 9, 2008) (temporary loss of privileges not "a dramatic departure from the basic conditions" of prison life). For these reasons, the court finds that Plaintiff fails to state a due process claim for her Ad-Seg placement.

Moreover, **false disciplinary reports** do not raise a constitutional claim because there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. <u>Canovas v. California Dept. of Corrections</u>, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); <u>see</u> <u>e.g.</u>, <u>Lee v. Whitten</u>, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against [her] and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." <u>Jones v. Woodward</u>, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1410 (8th Cir. 1994); <u>McCrae v. Hankins</u>, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against false information being reported against her.

The court will recommend that Plaintiff's due process claim pertaining to disciplinary charges against her and her detention in Ad-Seg be dismissed.

## C.   <u>Threat to Safety – Eighth Amendment Claim</u>

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." <u>Labatad v.</u>

Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing Farmer, 511 U.S. at 832-33 and Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." Labatad, 714 F.3d at 1160 (citing Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002)).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. Id. at 832-33; Frost, 152 F.3d at 1128. As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis, and citations omitted). Mere negligent failure to protect an inmate from harm is not actionable under § 1983. Farmer, 511 U.S. at 835.

Plaintiff claims that her safety was threatened because after she was assaulted in unit 510-16 by her cellmate Dixon and asked to be moved to another yard. The C Facility Program Office told her that no one in the cell had provided any information that would lead them to believe that she had been assaulted and reassigned her to housing in unit 511, also in C-yard.  Plaintiff acknowledges that when she was first examined after the assault, the bruises on her face were not yet visible.  Plaintiff refused the housing due to safety concerns and was disciplined by a term in Ad-Seg.  Plaintiff later discovered that the staff had evidence she had been assaulted but did not act on it.

15

Plaintiff's allegations are not sufficient to support a claim for failure to protect her. Plaintiff has not shown that any named Defendant knew that she would be subject to serious harm if reassigned to housing in unit 511, yet disregarded the risk and assigned her there anyway, causing her to be harmed.  The court shall recommend that Plaintiff's failure-to-protect claim be dismissed.

**V.      CONCLUSION AND RECOMMENDATIONS**

For the reasons set forth above, the court finds that Plaintiff states a cognizable claim in the First Amended Complaint against Defendant Sergeant Amezcua for subjecting her to adverse conditions of confinement in violation of the Eighth Amendment, but no other cognizable claims upon which relief may be granted under § 1983.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Here, the court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances she challenges, that would state any other cognizable claim under section 1983.  "A district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, the Court shall recommend that Plaintiff proceed only with her cognizable claim against Defendant Amezcua, and that all other claims and defendants be dismissed from this case for failure to state a claim.

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.      Plaintiff's case proceed only on her cognizable claim against Defendant Sergeant Amezcua for subjecting her to adverse conditions of confinement in violation of the Eighth Amendment;

2.      All other claims and defendants be dismissed from this case for Plaintiff's failure to state a claim;

3.      Plaintiff's claims for excessive force, assault by cellmate, loss of personal property, confinement in Ad-Seg, false reports against her, and failure to protect her be dismissed from this case for failure to state a claim;

4.      Defendant CCWF be dismissed from this case based on Eleventh Amendment Immunity; and

5.      This case be referred back to the magistrate judge for further proceedings, including service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 16, 2022**                    **_____/s/ Gary S. Austin_**
                                        UNITED STATES MAGISTRATE JUDGE